## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ADVANTAGE MEDICAL ASSOCIATES, P.A., a New Jersey professional association, individually and as the representative of a class of similarly-situated persons and entities, | ) ) ) ) ) | No. 2:24cv8913 |
| | ) | |
| Plaintiff, | ) | **CLASS ACTION** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| EVERNORTH HEALTH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### CLASS ACTION COMPLAINT

Plaintiff Advantage Medical Associates, P.A. ("Plaintiff") brings this action on behalf of itself and all others similarly situated and, except as to those allegations pertaining to Plaintiff or its attorneys, which are based on personal knowledge, alleges the following upon information and belief against defendant Evernorth Health, Inc. ("Evernorth" or "Defendant") after a reasonable investigation by counsel.

### PRELIMINARY STATEMENT

1.      The Telephone Consumer Protection Act, 47 U.S.C. § 227, prohibits sending any "unsolicited advertisement" by fax. 47 U.S.C. § 227 (b)(1)(C).

2.      The TCPA provides a private right of action and statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3). If the violation is willful or knowing, a

court may increase the award up to $1,500 per violation. The court may also grant injunctive relief.

3.    On March 27, 2024, Plaintiff received an unexpected facsimile message from "Evernorth Health Services, a division of the Cigna Group."

4.    Plaintiff's fax machine automatically printed the message onto paper. A true and correct copy is attached as **Exhibit A**.

5.    Evernorth (or some person acting on its behalf) sent **Exhibit A** to Plaintiff by fax transmission.

6.    The fax stated that Evernorth was seeking providers for its "medical network" and was offering to assist the recipient "in contracting directly with Cigna." **Exhibit A**.

7.    **Exhibit A** advertises the "commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227 (a)(5).

8.    Evernorth did not have Plaintiff's express invitation or permission to send **Exhibit A** or any advertisement to Plaintiff by fax.

9.    Because the advertisement has no opt-out notice, any "established business relationship" with Plaintiff would not provide Evernorth an exception to the TCPA's junk fax prohibition. **Exhibit A**. 47 U.S.C. § 227(b)(1)(C)(i) and (iii).

10.    On behalf of itself and a class of similarly-situated others, Plaintiff brings this action seeking statutory damages and other relief for each of Evernorth's

violations of the TCPA within the four years before this action was commenced and continuing until the Court directs notice to the class.

## PARTIES, JURISDICTION, AND VENUE

11.    Plaintiff Advantage Medical Associates, P.A. is a New Jersey professional association operating a medical practice in East Brunswick, New Jersey.

12.    Defendant Evernorth Health, Inc. is a Delaware corporation with its principal place of business located at One Express Way, St. Louis, MO 63121. Its registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St, Wilmington, DE 19801.

13.    The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

14.    Personal jurisdiction exists over Evernorth in New Jersey because it has committed tortious acts in the State by sending unlawful fax advertisements to New Jersey residents and because it is doing business in the State.

15.    Venue is proper in the District Court of New Jersey because Plaintiff received the unlawful fax within this District and Evernorth has transacted business and committed statutory torts within this District.

## FACTS

16.    Plaintiff operates a medical practice at 561 Cranbury Rd, East

Brunswick, NJ 08816.

17.    Evernorth is a wholly-owned subsidiary of The Cigna Group. *See* https://s202.q4cdn.com/757723766/files/doc_financials/2023/ar/2023-Annual-Report.pdf, at Exhibit 21 – Subsidiaries of the Registrant.

18.    The Cigna Group, through its predecessor companies, was incorporated in Delaware in 1981. Cigna Corporation was renamed The Cigna Group in February 2023. *Id.* at p. 2.

19.    Evernorth partners with health plans, employers, governmental organizations, and health care providers to solve challenges in the areas of pharmacy benefits, home delivery pharmacy, specialty pharmacy, specialty distribution, and care delivery and management solutions. https://s202.q4cdn.com/757723766/files/doc_financials/2023/ar/2023-Annual-Report.pdf, at 65, Evernorth Health Services Segment; at 81, Note 1 to Consolidated Financial Statements.

20.    In 2023, Evernorth Health Services reported adjusted revenues of $153.5 billion and pre-tax adjusted income from operations of $6.4 billion. https://s202.q4cdn.com/757723766/files/doc_financials/2023/ar/2023-Annual-Report.pdf, at p. 2.

21.    On March 27, 2024, Plaintiff received an unsolicited advertisement on its fax machine connected to its telephone fax number, 732-390-1900. A true and

correct copy of the facsimile advertisement is attached as **Exhibit A**.

22.    **Exhibit A** consists of a fax cover sheet and a two-page standardized

form advertisement.

23.    The standardized form begins as follows:

Good morning,

Affordable, predictable, and simple: That's what we believe health
care should be for our customers, and how we create lasting
relationships with providers who are part of our medical network. We
understand the importance of embracing a true commitment to change,
making health care accessible, and removing hurdles that may impede
a person's journey towards attaining good health and longevity.

If you're interested in contracting directly with Cigna I have a
contract I would like to send over for your review. However, I do
need to verify a few key pieces of information with you before we
can send this information over.

**Exhibit A**.

24.    The fax also states, Evernorth "need[s] to verify a few pieces of

information with you before we can send this information over," followed by a list

of 13 questions for the recipient to complete and only one question, Plaintiff's

address, to be verified. **Exhibit A**.

25.    The only information unique to Plaintiff in **Exhibit A** is Plaintiff's

name and fax number on the cover sheet and its "Primary practice address" on the

standardized form. The use of capitalized text for that information suggests

Evernorth culled it from a computerized target list of provider names, fax numbers,

and addresses.

5

26.     The fax header at the top of **Exhibit A** includes the date and time of the fax transmission ("2024/03/27 11:52:07"), an email address ("MedicalHCPEnrollment@Evernorth.com"), and Plaintiff's fax number ("7323901900").

27.     **Exhibit A** purports to show, in the signature block, that the fax was sent by a person named "Shealee V." in "Network Operation Medical Recruitment" for "Evernorth Health Services, a division of The Cigna Group."

28.     The email address in the signature block of **Exhibit A**—MedicalHCPEnrollment@Evernorth.com—matches the email address in the fax header.

29.     **Exhibit A** is a standardized form that encourages healthcare provider recipients to insert information so Evernorth can use it to induce the provider to contract with Evernorth or Cigna.

30.     The purpose underlying **Exhibit A** is evident from the language of the form, which seeks to induce providers to be part of Evernorth's "medical network" or "contract[] directly with Cigna," and the questions contained in the form, and the information it seeks to obtain and "verify" relate to that solicitation.

31.     **Exhibit A** was a commercial offer to provide Plaintiff services in marketing its business to one or more networks of insured persons.

32.     Evernorth did not have Plaintiff's express invitation or permission to

6

send **Exhibit A** or any advertisement to Plaintiff by fax.

33.    **Exhibit A** has no opt-out notice, so any "established business relationship" between Plaintiff and Defendant would not justify sending an otherwise unsolicited advertisement to Plaintiff's fax machine. 47 U.S.C. § 227(b)(1)(C)(i) and (iii).

34.    Healthcare providers are a captive audience for faxes, as they leave their fax machines on and ready to send or receive urgent, confidential, and private communications.

35.    Like other healthcare providers, Plaintiff uses its fax machine to send or receive confidential, urgent, and transactional communications, not to send or receive advertisements.

36.    In contrast to paper junk mail that arrives in a USPS mailbox, a junk fax can be received only at the recipient's ten-digit fax number and only using special equipment—a telephone facsimile machine—paid for by the recipient. The sender of a "junk fax" uses the recipient's fax machine to deliver the unsolicited advertisement.

37.    Every unsolicited advertisement received by fax causes concrete harm to its recipient.

38.    A fax can be received only with special equipment connected to a 10-digit fax number. Maintaining a dedicated fax number and a functioning fax machine

costs money.

39.    Fax transmissions are sent between ten-digit numbers assigned by the North American Numbering Plan Administrator ("NANPA")—from one number in the integrated North American Numbering Plan ("NANP") to another NANP number—using the Public Switch Telephone Network ("PSTN") and the ITU T.30 faxing protocol as regulated by the FCC.[1] Each successful fax transmission crosses the public, regulated telephone network and the regular telephone lines.

40.    Every unsolicited fax advertisement invades the recipient's privacy and wastes the recipient's valuable time, as one or more individuals must review and scrutinize the sender's message to discern its source, purpose, and nature. Each facsimile must be reviewed to discern whether it is an authorized, important, or priority communication regarding a patient or their treatment.

41.    An unsolicited fax causes undue wear and tear on the receiving fax machine. During its transmission, an unsolicited fax might prevent the receiving machine from sending or receiving an authorized fax. Often, a junk fax automatically prints to paper, as it did when Plaintiff received **Exhibit A**, also wasting the recipient's paper and ink toner. Printed or not, every unsolicited fax imposes incremental, per-page costs on its recipient.

---

[1]    NANP numbers are ten-digit numbers consisting of a three-digit Numbering Plan Area code, commonly called an area code, followed by a seven-digit local number.

## CLASS REPRESENTATION ALLEGATIONS

42.    Pursuant to Rule 23, Plaintiff brings this action as a class action on behalf of a class of persons and entities to which Defendant sent one or more advertisements by fax (the "Class"), initially defined as follows

> All persons and entities sent one or more documents by facsimile transmission on or after August 30, 2020, containing content from Evernorth Health Services recruiting or soliciting participation in a healthcare provider network, initiating a business relationship, or proposing a contracting opportunity.

43.    Excluded from the class are Defendant, Defendant's corporate parent or owner, any entity in which Defendant has a controlling interest, Defendant's employees, officers and directors, Defendant's legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, and his or her immediate family.

44.    Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after discovery about Defendant's fax advertising practices. **Exhibit A** is a "form letter"-type solicitation. Plaintiff intends to discover and include within this case all unsolicited advertisements Defendant sent by fax.

45.    This action is brought, and may properly be maintained as, a class action under Fed. R. Civ. P. 23. The action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements because: (1) the class is so

numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the representative party will fairly and adequately protect the interests of the class, and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.  Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23(b)(1)(A). Finally, common questions of law or fact predominate over any individual questions and class representation is the superior method to adjudicate this controversy under, as required by Rule 23(b)(3).

46.    **Numerosity/Impracticality of Joinder:** On information and belief, the class includes more than 40 persons and is so numerous that individual joinder of its members is impracticable. Plaintiff intends to discover the identities of the class members in Defendant's records or the records of third parties. **Exhibit A** is a form template, encouraging recipients to contract directly with Evernorth or Cigna, and obviously sent to a list of targets.

47.    **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and

which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.    Whether Evernorth, or someone acting on its behalf, sent unsolicited advertisements by fax;

b.    Whether **Exhibit A**—and other, similar documents sent by facsimile transmission—contained "material advertising the commercial availability or quality of property, goods, or services";

c.    The manner and method used to compile or obtain the list(s) of intended recipients of Evernorth's fax advertisements;

d.    Whether Evernorth obtained "prior express invitation or permission" to send advertising material by facsimile transmission to the intended recipients;

e.    Whether Evernorth included on the first page of its facsimile advertisements a clear and conspicuous opt-out notice including all content required by the TCPA and the FCC's regulations;

f.    Whether the Court should award statutory damages to Plaintiff and the other class members;

g.    Whether Evernorth violated the TCPA or the FCC's regulations knowingly or willfully and, if so, whether the Court should treble the statutory damages; and

h.    Whether the Court should enjoin Evernorth from faxing advertising material in the future.

48.    **<u>Typicality of Claims</u>**: Plaintiff's claims are typical of the claims of the other class members because they were injured by the same wrongful practices. Plaintiff and the other members of the class received Defendant's unsolicited advertisements by facsimile transmission. If Plaintiff prevails on its claims, then the putative class members will prevail as well.

49.    **<u>Adequacy of Representation:</u>** Plaintiff is an adequate representative of the class. Plaintiff's interests do not conflict with the interests of the class. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

50.    **<u>Prosecution of Separate Claims Would Yield Inconsistent Results</u>**: Common questions of fact and law predominate. Separate adjudication of class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendant to operate under if or when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if either Defendant chooses to advertise by fax again in the future.

51.  **A Class Action is the Superior Method of Adjudicating the Common Questions of Law or Fact that Predominate over Individual Questions**: A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit because individual litigation would be economically unfeasible and procedurally impracticable. There is no other TCPA lawsuit pending against Defendant. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

52.  Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

53.  Plaintiff brings Count I on behalf of itself and a class of similarly-situated persons.

54.  The TCPA provides in pertinent part as follows: 47 U.S.C. § 227 (b)(1)(C).

(b) Restrictions on use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

* * *

(C)    to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--

(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii) the sender obtained the number of the telephone facsimile machine through--

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or ….

14

47 U.S.C. § 227 (b)(1)(C).

55.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

56.    **Exhibit A** advertises the commercial availability or quality of property, goods, or services.

57.    Evernorth did not have Plaintiff's prior express invitation or permission to send **Exhibit A** or any advertising material to Plaintiff's fax machine.

58.    The TCPA provides a private right of action as follows:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

15

59.    The TCPA permits an advertiser to fax an otherwise "unsolicited advertisement" to a person with whom the sender has an "established business relationship," but the first page of the advertisement must contain a specific, clear, and conspicuous opt-out notice, or else it violates the TCPA. 47 U.S.C. § 227(b)(2)(D); 47 C.F.R. § 64.1200(a)(4)(iii).

60.    The opt-out notice on an otherwise unsolicited advertisement sent by fax must include "a domestic contact telephone and facsimile number for the recipient to transmit such a request to the sender" as well as a "cost-free mechanism for a recipient to transmit a request pursuant to such notice ..." 47 U.S.C. § 227(b)(2)(D)(iv).

61.    "A notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if ... (v) the telephone and facsimile machine numbers and the cost-free mechanism ... permit an individual or business to make such a request at any time on any day of the week." 47 U.S.C. § 227(b)(2)(D)(v).

62.    The FCC's regulations of opt-out notices on facsimile advertisements are set forth in 47 C.F.R. § 64.1200(a)(4)(iii).

63.    Exhibit A does not contain a compliant opt-out notice: (1) **Exhibit A** has no "clear and conspicuous" opt-out notice; (2) **Exhibit A** does not state that the recipient may make a request to the sender of the advertisement not to send any

future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request is unlawful; (3) **Exhibit A** does not identify a domestic facsimile machine number to which the recipient may send an opt-out request; and (4) **Exhibit A** does not set forth the requirements of a valid opt request, including stating that a request not to send future unsolicited advertisements must identify the telephone number to which the request relates, a request must be made to the telephone or facsimile number provided in the opt-out notice, and that the opt-out request will be overridden by the person or entity providing express invitation or permission" to send advertisements by fax.

64.    Evernorth violated 47 U.S.C. § 227, *et seq*., and the FCC's regulations, by faxing advertisements to Plaintiff and the other class members without their prior express invitation or permission and, to the extent it contends it sent any facsimile because of an "established business relationship," by failing to include a compliant, clear and conspicuous opt-out notice on the first page of the advertisement.

65.    Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients know how to prevent and avoid future fax transmissions of advertising material, and to provide the various cost-free means Congress required to be made available to do so. If senders do not

clearly and conspicuously provide the opt-out content to the recipients, then the recipients are unable to avoid the burdens imposed by this form of advertisement.

66.    The TCPA is a strict liability statute and Defendant is liable to Plaintiff and the other class members even if its actions were negligent.

67.    Defendant is liable because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on its behalf, and/or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority, and ratification.

68.    Defendant knew or should have known that Plaintiff and the other class members had not given express invitation or permission to receive Defendant's advertising material by fax.

69.    Defendant's actions caused harm. Defendant's junk faxes invaded each recipient's privacy and right to seclusion and caused Plaintiff and others to lose paper and toner consumed in printing Defendant's faxes. Moreover, the faxes used Plaintiff's and the class's fax machines, blocked or interfered with the sending and receiving capacity of the machines, increased costs associated with operating and maintaining the fax machines, and otherwise wasted valuable resources. Receiving and reviewing a junk fax wastes the recipient's valuable time.

70.    Plaintiff does not seek to recover for actual monetary loss. Rather, for itself and every other member of the class, Plaintiff seeks an award of $500 in damages for each violation of the TCPA.

71.    The Court, in its discretion, can treble the statutory damages for knowing or willful violations. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly-situated, demands judgment in their favor and against Defendant, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award $500.00 in statutory damages for each of Defendant's violations of the TCPA or the FCC's regulations;

C.    That the Court treble the statutory damages to $1,500 per violation if it finds that Defendant violated the TCPA or the FCC's regulations knowingly or willfully;

D.    That the Court enter an injunction prohibiting Defendant from sending any advertising material by fax without first demonstrating that prior express invitation or permission has been obtained or that the document to be sent by fax transmission includes the required opt-out notice; and

E.      That the Court award costs and such further relief as the Court

may deem just and proper.

Respectfully submitted,

Advantage Medical Associates, P.A., individually and as the representative of a class of similarly-situated persons,

By:      Michael J. Canning /s                                   

Michael J. Canning, Esq.
Matthew N. Fiorovanti, Esq.
Giordano, Halleran & Ciesla, P.C.
125 Half Mile Road, Suite 300
Red Bank, New Jersey 07701-6777
Telephone: 732-741-3900
Email: MCanning@ghclaw.com
Email: MFiorovanti@ghclaw.com

Phillip A. Bock (*pro hac vice* to be submitted)
David M. Oppenheim (*pro hac vice* to be submitted)
Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Telephone: 312-658-5500
Email: service@classlawyers.com

# EXHIBIT A

# *Facsimile Transmission Cover Sheet*

<span style="background:black"> </span>

DATE:          2024/03/27 11:52:07

FAX #:         17323901900

FROM:          MedicalHCPEnrollment@Evernorth.com

SUBJECT:       Cigna HealthCare Verification -MISHA BASALAEV_3/27/2024

TOTAL NUMBER OF PAGES (INCLUDING THIS PAGE):        3

CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.

Good Morning,


Affordable, predictable, and simple: That's what we believe health care should be for our customers, and how we create lasting relationships with providers who are part of our medical network. We understand the importance of embracing a true commitment to change, making health care accessible, and removing hurdles that may impede a person's journey towards attaining good health and longevity.

If you're interested in contracting directly with Cigna I have a contract I would like to send over for your review. However, I do need to verify a few key pieces of information with you before we can send this information over.


Can you confirm and return the information below:

1.      Does the provider currently see patients? Yes or No

2.      Group/Practice Name:

3.      Primary practice address: 561 CRANBURY RD EAST BRUNSWICK, NJ ·08816

4.      Are there any additional office locations? Yes or No

5.      Primary Specialty:

6.      Provider's Degree:

7.      Services Rendered:

8.      Is this an individual or group practice?

9.      Does the provider have hospital privileges? Yes or No - If yes, where?

10.     Hospital based only provider: Yes or No - If yes, where?

11.     Last 4 digits of Billing Tax ID:

12.     Provider bills as PCP or Specialist?

13.     Additional providers? – List the provider's name, degree, NPI & specialty (if more than 6, provide a roster):

1.

2.

3.

4.

5.

6.

13a.    Do the providers all bill under the same Tax ID? Yes or No

        If no, provide the Tax ID they bill under next the provider's name above.

14.          Contracting Contact - Provide Name, Phone & Email:

Thank you,

+

Shealee V.

Network Operation Medical Recruitment

Evernorth Health Services, a division of The Cigna Group

F: 860.318.3729

E: MedicalHCPEnrollment@Evernorth.com

Confidential, unpublished property of Evernorth Health Services. Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel. © Copyright 2024  Evernorth Health
Services. Legal Disclaimer