NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADVANTAGE MEDICAL ASSOCIATES, P.A., <br><br> Plaintiff, <br><br> v. <br><br> EVERNORTH HEALTH, INC., <br><br> Defendant. | Civil Action No. 24-08913 (GC) (TJB) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Evernorth Health, Inc.'s Motion to Dismiss Plaintiff Advantage Medical Associates, P.A.'s Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 17.) Plaintiff opposed, Defendant replied, and Defendant thereafter submitted a Notice of Supplemental Authority. (ECF Nos. 22, 24, 25.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's Motion is **DENIED**.

I.   **BACKGROUND**

   A.   **Factual Background**[1]

Plaintiff operates a medical practice in East Brunswick, New Jersey. (ECF No. 1 ¶ 16.) As a healthcare provider, Plaintiff uses a fax machine "to send or receive confidential, urgent, and

---

[1] On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

transactional communications." (*Id.* ¶ 35.) Defendant, a wholly owned subsidiary of the Cigna Group, "partners with health plans, employers, governmental organizations, and health care providers to solve challenges in the areas of pharmacy benefits, home delivery pharmacy, specialty pharmacy, specialty distribution, and care delivery and management solutions." (*Id.* ¶¶ 18-19.)

On March 27, 2024, Plaintiff alleges that it "received an unsolicited advertisement on its fax machine connected to its telephone fax number" from Defendant. (*Id.* ¶ 21.) According to Plaintiff, the fax contained a "two-page standardized form advertisement," which read as follows:

> Good morning,
>
> Affordable, predictable, and simple: That's what we believe healthcare should be for our customers, and how we create lasting relationships with providers who are part of our medical network. We understand the importance of embracing a true commitment to change, making health care accessible, and removing hurdles that may impede a person's journey towards attaining good health and longevity.
>
> If you're interested in contracting directly with Cigna I have a contract I would like to send over for your review. However, I do need to verify a few key pieces of information with you before we can send this information over.

(*Id.* ¶¶ 22-23.) The fax, which Plaintiff attaches to the Complaint as an exhibit, includes fourteen questions about Plaintiff's medical practice. (*Id.* at 23-24.[2]) Among the questions are "[d]oes the provider currently see patients? Yes or No"; "[i]s this an individual or group practice?"; and "[d]oes the provider have hospital privileges? Yes or No - If yes, where?" (*Id.*) Plaintiff asserts that "[t]he only information unique to Plaintiff in [the fax] is Plaintiff's name and fax number on the cover sheet and its 'Primary practice address' on the standardized form."[3] (*Id.* ¶ 25.) According to

---

[2]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]   The fax is addressed to "Misha Basalaev." (ECF No. 1 at 23.)

Plaintiff, the "use of capitalized text for [this personalized] information suggests Evernorth culled it from a computerized target list of provider names, fax numbers, and addresses." (*Id.*)

The fax also includes the email address for the sender, MedicalHCPEnrollment@Evernorth.com, and was sent by an individual in Network Operation Medical Recruitment for "Evernorth Health Services, a division of The Cigna Group." (*Id.* ¶¶ 26-27.) Plaintiff contends that the fax is "a standardized form that encourages healthcare provider recipients to insert information so Evernorth can use it to induce the provider to contract with Evernorth or Cigna." (*Id.* ¶ 29.) However, Plaintiff alleges that Defendant "did not have Plaintiff's express invitation or permission to" send it the fax, and further asserts that "[e]very unsolicited fax advertisement invades the recipient's privacy and wastes the recipient's valuable time, as one or more individuals must review and scrutinize the sender's message to discern its source, purpose, and nature." (*Id.* ¶¶ 32, 40.) Moreover, Plaintiff contends that receiving unsolicited faxes "causes undue wear and tear on the receiving fax machine" and Plaintiff notes that "an unsolicited fax might prevent the receiving machine from sending or receiving an authorized fax." (*Id.* ¶ 41.)

### B.   Procedural Background

On September 3, 2024, Plaintiff filed its one-count Class Action Complaint asserting violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.[4] (*See* ECF No. 1.) Plaintiff defines the potential class as follows:

> All persons and entities sent one or more documents by facsimile transmission on or after August 30, 2020, containing content from Evernorth Health Services recruiting or soliciting participation in a healthcare provider network, initiating a business relationship, or proposing a contracting opportunity.

---

[4]   The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

(*Id.* ¶ 42.) Plaintiff seeks "$500.00 in statutory damages for each of Defendant's violations of the TCPA or the [Federal Communications Commission's (FCC)] regulations," and seeks treble damages of $1500 per violation if Defendant "knowingly or willfully" violated the TCPA or FCC regulations. (*Id.* ¶ 71.) On February 7, 2025, Defendant moved to dismiss the Complaint, arguing that the fax at issue is not an "advertisement" within the meaning of the TCPA. (*See generally* ECF No. 17.)

## II. LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic

documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

**III.    DISCUSSION**

"The TCPA makes it 'unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement[.]" *Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020) (quoting 47 U.S.C. § 227(b)(1)(C)).  Thus, the TCPA "does not prohibit all unsolicited faxes, just advertisements." *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 135 (3d Cir. 2019). Under the TCPA, an unsolicited advertisement is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C. § 227(a)(5); *see also Olson*, 959 F.3d at 561-62.  The United States Court of Appeals for the Third Circuit has held that "to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim." *Olson*, 959 F.3d at 562 (quoting *Optum Inc.*, 925 F.3d at 133).

The Third Circuit has developed two tests to determine whether a fax constitutes a TCPA violation—the direct purchaser test and the third-party liability test. *Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, Civ. No. 18-1903, 2020 WL 2793954, at *8 (E.D. Pa. May 29, 2020), *aff'd sub nom. Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93 (3d Cir. 2023). Under the direct purchaser test, "the fax either must (1) notify a potential buyer that he or she can purchase a product, goods, or services from the sending entity or perhaps another seller, . . . or (2)

5

induce or direct a willing buyer to seek further information through a phone number, an email address, a website, or equivalent method for the purposes of making a purchase[.]" *Mauthe v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246, 249 (3d Cir. 2019) (internal citation omitted); *see also Millennium Health LLC*, 2020 WL 2793954, at *8.  Under the third-party liability test, a plaintiff must show "that the fax: (1) sought to promote or enhance the quality or quantity of a product or services being sold commercially; (2) was reasonably calculated to increase the profits of the sender; and (3) directly or indirectly encouraged the recipient to influence the purchasing decisions of a third party." *Optum Inc.*, 925 F.3d at 133.

  Defendant does not dispute that it sent the unsolicited fax.  (*See generally* ECF Nos. 17-1 & 24.)  Defendant solely argues that the fax did not contain an "advertisement" as contemplated by the TCPA.  (*Id.*)  Defendant argues that the fax is not an advertisement because "nothing about the challenged three-page fax"—which it characterizes as "purely informational"—would suggest "to a reasonable person that the sender is trying to make a sale."  (ECF No. 17-1 at 6.)  Defendant submits that the fax does not directly encourage the recipient to purchase goods or services.  (*Id.* at 10-17.)  Moreover, Defendant argues that the fax does not influence the purchasing decisions of a third party.  (*Id.* at 18-19.)  Finally, Defendant contends that the fax does not "bear the markings 'commonly associated with an advertisement,' such as 'testimonials, product images, or coupons.'"  (*Id.* at 19-21 (quoting *Millennium Health LLC*, 58 F.4th at 96).)

  In opposition, Plaintiff argues that the fax meets the TCPA's definition of an unsolicited advertisement because it "boasts about the quality of Cigna's services and invites Plaintiff to join Cigna's network so that Plaintiff may provide medical services (for a fee) to Cigna's patients." (ECF No. 22 at 4.)  According to Plaintiff, the fax is an advertisement under both the direct purchaser and third-party liability standards because "the fax not only promotes a direct contractual

6

and commercial relationship between Plaintiff and Cigna but also highlights the quality of Cigna's healthcare to patients, tacitly encouraging Plaintiff to recommend Cigna's services to others." (*Id.* at 9.) Plaintiff also asserts that faxes do not "need to include a company logo, offer a specific payment amount, or contain some other promotional gimmick" to qualify as an advertisement. (*Id.* at 4.)

At this stage, the Court finds that Plaintiff has plausibly alleged that the fax constitutes an advertisement under the TCPA. In so holding, the Court follows the Third Circuit's ruling in *Fischbein v. Olson Research Group, Inc.*, where the court held that "[a]ny fax announcing the availability of an opportunity for the recipient to exchange goods or services for compensation is 'material advertising the commercial availability or quality of any property, goods, or services,' within the TCPA." 959 F.3d at 562 (citing 47 U.S.C. § 227(a)(5)). In *Olson*, the Third Circuit determined that "[a]n offer of payment in exchange for participation in a market survey is a commercial transaction, so a fax highlighting the availability of that transaction is an advertisement under the TCPA." *Id.* at 564.

Defendant argues that this Court should not follow *Olson* as it "has been criticized as stretching the meaning of 'advertisement'" and because it is factually distinguishable in that the fax here contained no explicit offer of any payment. (ECF No. 17-1 at 11 (citing the dissent in *Olson* and out-of-circuit cases).) Plaintiff counters by arguing that "[a]nyone reading the fax would understand that Cigna offers healthcare services [and] that it is inviting the recipient to contract directly with Cigna as a network provider." (ECF No. 22 at 13.)

The Court agrees with Plaintiff. Although the fax contains no *express* offer to compensate Plaintiff for a specific amount, it can plausibly be read as *implicitly* offering compensation to Plaintiff in exchange for Plaintiff joining Cigna's network. (ECF No. 1 at 23.) The fax promotes

7

Cigna's network as "predictable[] and simple," "create[s] lasting relationships with providers who are part of [Cigna's] medical network," and "remov[es] hurdles that may impede" a patient from obtaining proper medical care. (*Id.*) Based on this language, the Court is satisfied that Plaintiff sufficiently alleges that the fax, at least indirectly, encourages the recipient to join Cigna's network in exchange for some financial benefit. *See Nat'l Imaging Assocs., Inc.*, 767 F. App'x at 249 ("Though an advertisement need not be as explicit as 'buy this product from us,' at a minimum for the sending of the fax to violate the TCPA it must directly *or indirectly* inform the recipient that the sender or some other entity sells something of value.") (emphasis added); *see also Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 606 (7th Cir. 2023) ("We agree that a fax must directly or indirectly encourage recipients to buy goods, services, or property to qualify as an unsolicited advertisement. But [the plaintiff] plausibly alleged that [the defendant's] faxes did just that by promoting the company's network of preferred medical providers, a network that would bring [the plaintiff] new business in exchange for a portion of the underlying client fees.").[5] The Court does

---

[5] Both parties argue that the Seventh Circuit's decision in *Smith* supports their respective positions. 77 F.4th 603 (7th Cir. 2023). In *Smith*, the Seventh Circuit reversed the district court's dismissal of the plaintiff-doctor's TCPA claim in which he alleged that the defendant sent him unsolicited faxes inviting him to join defendant's medical provider network. *Id.* at 606. Defendant argues that several factors the court found determinative in *Smith* are absent here, such as a specific fee schedule and proposed financial arrangement. (ECF No. 24 at 11-12.)

To be sure, the Seventh Circuit noted that "[i]t would be difficult for us to conclude that [the defendant] had engaged in advertising if the company merely offered to add [the plaintiff's] information to a list of providers." *Id.* at 609. Relying on the specifics of the fee schedule included with the fax in that case, the court found that the plaintiff plausibly alleged that the fax qualified as an unsolicited advertisement for a service under the TCPA. *Id.* The court specifically cabined its holding to "unsolicited faxes that an objective recipient would construe as urging the purchase of a good, service, or property by emphasizing its availability or desirability." *Id.* at 611.

The *Smith* court's holding that "courts must engage in a holistic examination of the faxed materials to determine whether they meet the requirements" of the TCPA is instructive. *Id.* at 609. Although the fax here does not include a fee schedule, the Court finds that the offer to enter into a contractual relationship and the promotional language about Cigna's network is sufficient to make Plaintiff's TCPA claim plausible at this stage. To the extent *Smith* is distinguishable, the Court

not construe the fax as promoting a *free* opportunity. *Cf. Millennium Health LLC*, 58 F.4th at 96 ("[N]o reasonable recipient of Millennium Health's unsolicited *free-seminar* fax could view it as promoting the purchase or sale of goods, services, or property.") (emphasis added). Indeed, the fax advises that a contract would be required to proceed.

The Court is also unpersuaded by Defendant's argument that the fax at issue is purely informational. Defendant contends that "the Evernorth fax simply notifies Dr. Basalaev about relevant information, nothing more. The fax does not make him aware of 'where or how' to purchase any good or service from Evernorth, and it does not propose the sale or purchase of goods or services." (ECF No. 17-1 at 13.) A plain reading of the fax contradicts this argument: The fax explicitly asks Plaintiff to verify certain pieces of information about Plaintiff's medical practice so that Defendant may respond with a proposed contract. (ECF No. 1 at 23.) And the cases cited by Defendant in support of its argument that the fax here is purely informational do not compel a different result. Those cases involved faxes that were truly informational, lacking promotional language and content that directed a buyer to purchase a product, good, or service. *See, e.g., S.A.S.B. Corp. v. Johnson & Johnson Health Care Sys. Inc.*, Civ. No. 23-21124, 2025 WL 1752358, at *3 (D.N.J. June 25, 2025) (finding that a fax was solely informational where it included information about the defendant's medication but "fail[ed] to notify a potential buyer that he or she can purchase a product, good, or service"); *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, Civ. No. 12-2132, 2013 WL 486207, at *5 (D.N.J. Feb. 6, 2013) ("[T]he faxes do not advertise

---

also notes that the Seventh Circuit in *Smith* appears to endorse a narrower view of what constitutes an "advertisement" under the TCPA than the view adopted by the Third Circuit in *Olson*. *Compare id.* at 610-11 (citing with approval cases which "rejected TCPA liability for faxes offering to hire recipients or pay them to take a survey") *with Olson*, 959 F.3d at 564 ("An offer of payment in exchange for participation in a market survey is a commercial transaction, so a fax highlighting the availability of that transaction is an advertisement under the TCPA.").

9

either the commercial availability or the quality of [the medication]; rather, they simply notify the recipient of [the medication's] reclassification and provide the recipient with up-to-date information."). Here, the fax expressly invokes a potential opportunity to contract with Cigna, which would further Cigna's stated goals of "create[ing] lasting relationships with providers who are part of [Cigna's] medical network" and "making health care accessible." (ECF No. 1 at 23.) *See Physicians Healthsource, Inc. v. Advanced Data Sys. Int'l, LLC*, Civ. No. 16-3620, 2020 WL 2764826, at *8 (D.N.J. May 28, 2020) ("[H]aving informational content does not conclusively prevent a fax from being classified as an advertisement.").

Finally, the lack of "testimonials, product images, or coupons" in the fax does not lead the Court to a contrary finding. Although the Third Circuit has noted that such markings are "commonly associated with an advertisement," *see Millennium Health*, 58 F.4th at 96, it is not dispositive. In *Millennium Health*, the court found that an informational fax about a free seminar did not constitute an advertisement because it did "not provide any email, phone number, or direct internet link to purchase a Millennium Health product or service." *Id.* The Court reasoned that the fax was purely educational in that it described research about opioids, invited attendance at an academic event, and introduced the event speaker. *Id.* Here, unlike in *Millennium Health*, the fax at issue expressly outlines the steps Plaintiff can take to contract directly with Cigna's medical network.

For these reasons, the Court finds that Plaintiff has plausibly alleged that the fax constitutes an advertisement under the direct purchaser theory of liability.[6] *See Robert W. Mauthe M.D., P.C.*

---

[6] At this stage, the Court need not reach the issue of whether Plaintiff also states a claim under the third-party liability standard adopted by the Third Circuit in *Optum*. 925 F.3d 129. Plaintiff may reassert its argument regarding third-party liability at the summary judgment stage. However, in *Optum* the court noted that "[a]n example of a possible TCPA violation by the sending of a fax to an entity other than a possible direct purchaser of the sender's product or services is a

*v. Spreemo, Inc.*, 806 F. App'x 151, 154 (3d Cir. 2020) ("At the pleading stage, [a TCPA plaintiff] merely needs to plead the plausible."). Accordingly, the Court will allow Plaintiff's TCPA claim to proceed.

## IV.   CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 17) is **DENIED**. An appropriate Order follows.

Dated: August 8, 2025

GEORGETTE CASTNER<br>
UNITED STATES DISTRICT JUDGE

---

fax sent to a doctor encouraging the doctor to prescribe a particular drug to the doctor's patients who, rather than the doctor, are the likely purchasers of the sender's product." *Id.* at 133. There do not appear to be any facts alleged or statements in the fax to suggest that Plaintiff has any influence over a patient's carrier.